**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

October 5, 2022

Peter J. Walsh, Jr., Esquire
Kevin R. Shannon, Esquire
Christopher N. Kelly, Esquire
Mathew A. Golden, Esquire
Callan R. Jackson, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Edward B. Micheletti, Esquire
Lauren N. Rosenello, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King Street, 7th Floor
P.O. Box 636
Wilmington, DE 19899-0636

Brad D. Sorrels, Esquire
Wilson Sonsini Goodrich & Rosati, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801

Re: *Twitter, Inc. v. Elon R. Musk et al.*,
C.A. No. 2022-0613-KSJM

Dear Counsel:

The parties have not filed a stipulation to stay this action, nor has any party moved

for a stay. I, therefore, continue to press on toward our trial set to begin on October 17,

2022.

Plaintiff Twitter, Inc. ("Plaintiff") filed a letter on September 17, 2022 requesting

sanctions against Defendants Elon R. Musk, X Holdings I, Inc., and X Holdings II, Inc.

(collectively, "Defendants") relating to Defendants' allegedly deficient production of text

messages and other instant messages to and from Elon Musk.[1]  Plaintiff seeks to compel production of all of Musk's messages from January 1, 2022 to July 8, 2022, and requests an adverse inference that Defendants recklessly or intentionally deleted or withheld damaging messages.[2]  I refer to this as Plaintiff's "Seventh Discovery Motion."  Defendants responded to Plaintiff's motion on September 21, and I heard oral argument on September 27.[3]

I assume that the reader is familiar with the factual background to this dispute, and I will skip to a discussion of the issues raised in the motion.

Plaintiff's Seventh Discovery Motion focuses on two types of messages: traditional (SMS) text messages and messages sent using the Signal platform. With respect to the text messages, Plaintiff advances three main arguments.  First, Defendants unreasonably frustrated Plaintiff's attempt to verify the adequacy of Defendants' production.  Second, there are messages missing from Defendants' production that have been produced by third parties or appear in Musk's phone logs.  Third, there are gaps in Defendants' production at critical times when it seems likely that Musk was communicating by text.  With respect to

---

[1] *See* C.A. No. 2022-0613-KSJM, Docket ("Dkt.") 532 ("Pl.'s Seventh Disc. Mot."). Although Plaintiff points to some alleged deficiencies in the production of text messages to and from Defendants' other custodian, Jared Birchall, its proposed order does not reference Birchall.  Dkt. 532 (Proposed Order Granting Plaintiff's Seventh Disc. Mot.). This decision therefore focuses on Musk's messages.

[2] Pl.'s Seventh Disc. Mot. at 14–15.

[3] *Id.* at 6–7; Dkt. 610 ("Opposition"); Transcript of September 27, 2022 Oral Argument and Partial Rulings on Miscellaneous Motions ("Sept. 27 Tr.") (to be docketed). Defendants refiled their opposition to correct an error in the original filing (Dkt. 575).

Signal, Plaintiff argues that Musk sent or received Signal messages during the relevant period and that their deletion or non-production amounts to sanctionable spoliation.

Plaintiff's first argument raises issues that have mostly been mooted. For example, they say that Defendants' initial batch of phone logs were incomplete; Defendants conceded as much but state that these incomplete logs were preliminary and were produced "in the interest of time."[4] Given that only two business days elapsed between my order requiring Defendants to produce the logs and the preliminary production, and the fact that the logs were maintained by a third party, Defendants' explanation is believable.

Plaintiff also notes that Defendants imposed unreasonable conditions and delays on its production of the logs, citing privacy concerns.[5] Defendants' stated privacy concern was that the records contain the personal phone numbers of unrelated parties.[6] Defendants did not explain, however, why phone numbers are so sensitive that the "Highly Confidential" designation described in the parties' confidentiality stipulation is inadequate to the task.[7] Defendants' attempt to condition production on additional confidentiality protections was unreasonable, but it is behind us. Defendants ultimately produced a complete copy of Musk's phone records to an online portal, which Plaintiff states it cannot

---

[4] Opposition at 7.

[5] *See* Dkt. 427 (Letter Decision Resolving Plaintiff's Fourth Discovery Motion) at 4; Plaintiff's Seventh Disc. Mot. at 6–9.

[6] Opposition at 7.

[7] *See* Dkt. 31. (Confidentiality Stipulation and Order)

"print, sort, notate, or otherwise integrate . . . into its broader discovery records."[8]  The issue is largely moot, but to the extent that Defendants have not yet produced a phone log that Plaintiff is able to print, sort, annotate, and integrate into its broader discovery efforts, Defendants are ordered to do so.

Plaintiff's next argument points to purportedly responsive text messages to or from Musk that have appeared in third-party productions or Musk's phone log but not Defendants' own production.[9]

Plaintiff identifies four texts exchanged between Musk and James Gorman, CEO of Morgan Stanley, on April 25.[10]  Defendants provide a copy of this exchange in their brief, arguing that the texts are non-responsive.[11]  I agree that they are non-responsive.

Plaintiff identifies 19 texts exchanged between Musk and attorney Alex Spiro during the relevant period, none of which were produced and only three of which appear on Defendants' privilege log.[12]  Defendants respond only that "not every communication between Musk and Spiro is relevant to the matters in dispute here."[13]  Perhaps that is true. But Defendants do not argue that any of the messages Plaintiff identifies are in fact

---

[8] Plaintiff's Seventh Disc. Mot. at 9.

[9] *Id*. at 9–10.

[10] *Id.* at 9.

[11] *See* Opposition at 17.

[12] Pl.'s Seventh Disc. Mot. at 9.

[13] Opposition at 18.

irrelevant or privileged. For the avoidance of doubt, Defendants are ordered to produce or log any of these messages that are responsive to Plaintiff's requests.

Plaintiff identifies four texts exchanged between Musk and Larry Ellison on May 12 and 13.[14] Defendants reproduced this exchange in their brief.[15] The texts reflect an attempt to coordinate a phone call on an unknown topic.[16] The exchange occurred at a crucial time during the parties' dispute—just hours prior to Musk's tweet purporting to place his acquisition of Twitter "temporarily on hold."[17] This exchange should have been produced; its omission, however, does not independently warrant sanctions.

Plaintiff identifies 58 texts between Birchall and Morgan Stanley banker Kate Claassen that appear in Morgan Stanley's third-party production.[18] Defendants did not initially produce this document, but they purport to have cured the deficiency with a last-minute production on September 16.[19] Plaintiff argues that this production indicates that Defendants' efforts to identify responsive messages thus far has been "lackadaisical."[20] The supplemental production in question appears to be largely non-substantive, however.[21]

---

[14] Pl.'s Seventh Disc. Mot. at 9.

[15] Opposition at 18–19.

[16] *Id.*

[17] Pl.'s Seventh Disc. Mot. at 9.

[18] Pl.'s Seventh Disc. Mot. at 10.

[19] Opposition at 20–21 n.7.

[20] Pl.'s Seventh Disc. Mot. at 11.

[21] *See* Pl.'s Seventh Disc. Mot., Ex. 15.

Additionally, Plaintiff is now able to check the completeness of Defendants' production against Musk's phone logs, mitigating any inference that Defendants are hiding as-yet unidentified text messages.

Taken together, these deficiencies do not warrant sanctions against Defendants for failure to produce responsive text messages.

Plaintiff's third argument relies on gaps in Musk's text log at critical times.[22] Defendants have produced no Musk text messages between May 24 and May 30, nor between June 1 and June 7.[23] These periods were important to the parties' dispute, and I share Plaintiff's concern that Musk produced no responsive text messages from these periods.

The absence of communications from these periods raises the possibility that Musk communicated through other informal channels not captured by text records, such as iMessage or Signal. Defendants argue that Musk sent few to no text messages during the relevant period, but do not meaningfully address Musk's use of other messaging services.[24] Defendants say that the gaps in the log are partly due to Musk's overseas travel in late May,[25] but it is also entirely possible that Musk used internet-based messaging services

---

[22] Pl.'s Seventh Disc. Mot. at 13.

[23] *Id.* Plaintiff previously complained that Musk produced only four messages on May 6 and zero messages between May 7 and May 10; it is not clear if that is still the case or if more messages in this range have since been produced. *Id.* at 3.

[24] *See* Opposition at 20.

[25] Opposition at 20.

during that period because those services do not involve many of the international roaming difficulties of traditional text messages. Indeed, Musk has stated publicly that he uses "iMessage and Signal,"[26] and Jared Birchall testified during his deposition that he and Musk use Signal to communicate about "personal financial matters."[27]

Because it seems possible (even likely) that Musk used informal channels of communications other that text message during the relevant gaps, to the extent that Defendants have not done so already, Defendants are ordered to collect and produce responsive iMessages and non-SMS instant messages in Musk's files from May 24 through May 30 and June 1 through June 7. Defendants shall also produce any messages pre- or post-dating this period necessary to place the messages within this period in context.

With respect to Signal, Plaintiff argues that Defendants' failure to produce Signal messages (other than one screen shot discussed below) raises an inference that Musk deleted relevant messages that he was obligated to preserve.[28]

Signal is an encrypted messaging service that can be set to automatically delete messages after a certain period of time. The automatic delete function can be disabled,[29]

---

[26] Dkt. 634 at 21–22.

[27] Dkt. 680, Ex. 6 ("Birchall Dep. Tr.") at 29:2–6.

[28] Pl.'s Seventh Disc. Mot. at 12–13.

[29] *Set and Manage Disappearing Messages*, Signal Support, https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages (accessed October 3, 2022).

and Signal text messages can also be captured through screenshots and other means.[30]  As discussed above, Musk has publicly stated that he uses Signal,[31] and Birchall testified he "primarily" used Signal to communicate private or personal information to Musk, including "personal financial matters."[32]  Birchall acknowledged that Musk's "purchases [sic] of Twitter" would qualify as his "personal financial matters" but stated that he did not "recall using Signal" "with regard to any matters relating to Twitter."[33]

Third-party discovery revealed an exchange between Musk and Marc Andreessen (the "Andreessen Signal Exchange").[34]  Andreessen reached out to Musk through Signal on April 25, expressing interest in joining Musk's acquisition of Twitter as an equity partner.[35]  Musk responded enthusiastically and directed Andreessen to follow up with Birchall.[36]

After Plaintiff received the Andreessen Signal Exchange in discovery, Plaintiff sought clarification concerning Defendants' use of Signal to communicate regarding the Twitter transaction.  In response, on September 15, Defendants' counsel informed Plaintiff that "Defendants have confirmed to counsel that they do not recall sending or receiving

---

[30] *See*, *e.g.*, Pl.'s Seventh Disc. Mot. at 4–5; Dkt. 634 at 24 ("Birchall Signal Exchange").

[31] Dkt. 634 at 21–22.  Musk has also publicly endorsed Signal, with tweets including "Signal is the least insecure messaging service" and "Use Signal." *Id.*

[32] Birchall Dep. Tr. at 26:14–27:10, 29:2–6.

[33] *Id.* at 29:7–20.

[34] Pl.'s Seventh Disc. Mot. at 4–5.

[35] *Id.* at 5.

[36] *Id.*

any other messages relating to the Merger through Signal or any other ephemeral messaging client," except the Andreessen Signal Exchange.[37] Defendants also provided an affidavit from Musk regarding his use of Signal.[38] The affidavit states in relevant part:

> By the second week of May, I had developed concerns regarding certain representations made by Twitter in, and in connection with, the Merger Agreement, and I had begun to consult with my lawyers regarding my rights. Aside from the April 25, 2022 message from Andreesen [sic], I do not recall having any other communications regarding my planned purchase of Twitter through the Signal app before that point, and I did not communicate regarding the Twitter transaction using Signal (or any other messaging service that deletes messages after a period of time) from that point onward . . . I have not intentionally deleted any e-mail, text, or other communication or document related to this matter, and I am not aware of having accidentally deleted any e-mail, text, or other communication or document related to this matter.[39]

After Musk submitted his affidavit, discovery revealed yet another instance in which Musk used Signal to communication concerning the Twitter transaction. During oral argument on September 27, Plaintiff presented another set of Signal messages (the "Birchall Signal Exchange"),[40] which Plaintiff obtained from Defendants only hours before the hearing.[41] A screenshot of the Birchall Signal Exchange was attached to a text message

---

[37] *Id.* at 4–5.

[38] Dkt. 575, Ex. 7 ¶ 8.

[39] *Id.* ¶¶ 8–9.

[40] Birchall Signal Exchange.

[41] Sept. 27 Tr. 160:12–19.

from Birchall produced by Defendants.[42]   It appears to depict a Signal conversation between Musk and Birchall regarding planned meetings with investors and a regulator in connection with the Twitter transaction.[43]   Although the date of the Birchall Signal Exchange itself is unclear, the message to which it was attached was sent on May 1, and the time-sensitive nature of its content suggests that it was sent on or very near May 1.[44] The substance of the Birchall Signal Exchange screenshot is titled "Today," further suggesting that the screenshot of the Birchall Signal Exchange and Birchall's message were roughly contemporaneous.[45]

Musk initiated the Birchall Signal Exchange, and it concerned routine scheduling matters.  It seems unlikely, therefore, that the Birchall Signal Exchange and the Andreessen Signal Exchange were the only times Musk chose to use Signal to communicate regarding the Twitter transaction.[46]   Moreover, the top of the Birchall Signal Exchange screenshot includes the bottom of a blue message bubble labeled "Yesterday," suggesting that Musk and Birchall also communicated using Signal the previous day.[47]

The Birchall Signal Exchange demonstrates that Musk's recollection concerning his use of Signal to discuss the Twitter transaction is inaccurate.  The exchange, however, does

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

not reveal the extent of that inaccuracy.  It is reasonable to infer from Defendants' representations and the apparent lack of any Signal messages in their production thus far that Musk used Signal's automatic deletion feature.  Defendants state that they have "investigated the ability to restore Signal messages sent or received during the requested discovery period and determined that it was not possible to do so."[48]

I am forced to conclude that it is likely that Defendants' custodians permitted the automatic deletion of responsive Signal communications between them and possibly others, and that those communications are irretrievably lost.  At this stage, it is unclear to me whether deletions occurred when Defendants were under a duty to preserve documents. (Defendants peg the date as of which they were under a duty to preserve as May 13,[49] but Musk was named a defendant in an action concerning the Twitter transaction that was filed on May 6.)[50]  If Defendants deleted documents after they were under a duty to preserve, some remedy is appropriate, but the appropriate remedy is unclear to me at this stage.  I will reserve my ruling regarding Plaintiff's request for sanctions, including adverse inferences, pending post-trial briefing, when I have a fuller understanding of the record.

---

[48] Pl.'s Seventh Disc. Mot., Ex. 7 at 4–5.

[49] *See* Sept. 27 Tr. 167:21–23.

[50] *See Orlando Police Pension Fund v. Twitter, Inc. et al.*, C.A. No. 2022-0396-KSJM

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Chancellor

cc:    All counsel of record (by *File & ServeXpress*)